CLYDE J. HUGGINS, WALTER E. JOHNSON, ERNEST G. NORTHCUTT, LOTTIE H. SCONYERS AND DORIS T. WHITE, AND OTHERS SIMILARLY SITUATED, v. THE WAKE COUNTY BOARD OF EDUCATION.

(Filed 22 November, 1967.)

**1. Evidence § 3—**

It is a matter of common knowledge, and therefore a matter of which the courts may take judicial notice, that a large-scale transfer of students and teachers from one school to another in the midst of the academic year would entail widespread confusion and disruption in both schools.

**2. Injunctions § 1—**

While a preliminary mandatory injunction may be issued to restore a status, wrongly disturbed, the issuance of such an order rests in the sound discretion of the court and is generally deemed to require a clear showing of substantial injury to the plaintiff, pending the final hearing, if the existing status is allowed to continue to such hearing.

**3. Injunctions § 14—**

The findings of fact and other proceedings upon a hearing to determine whether a temporary injunction should issue are not proper matters for the consideration of the court or jury in passing upon such issues at the final hearing and are, therefore, not binding upon them.

**4. Same—**

The decision of the Supreme Court upon an appeal from an order denying a temporary injunction does not determine any other right of the parties that might be raised at a later stage of the proceedings.

**5. Injunctions § 12—**

An application for a temporary injunction is ordinarily addressed to the sound discretion of the court.

**6. Appeal and Error § 58—**

While the Supreme Court, upon an appeal from the granting or denial of a temporary injunction, is not bound by the findings of fact in the court below and may review the evidence and make its own findings of fact, the burden is upon the appellant to show error by the lower court.

**7. Injunctions § 13—**

Application for a temporary injunction is properly denied where the injury likely to be sustained by the plaintiff from the continuance of the conduct of which he complains, pending the final hearing of the matter, is substantially outweighed by the injury which will be done the defendant by the prevention of such conduct during the litigation.

**8. Same—**

In determining whether or not a temporary injunction should issue pending the outcome of litigation, the court may properly take into account probable injuries to persons not parties to the action and to the public if such an injunction were to be issued.

**9. Same; Schools § 4— Application for restraining order which would result in transfer of pupils and teachers during school year held properly denied.**

Six days prior to the opening of the school year, plaintiffs applied for a temporary order to restrain a board of education from discontinuing instruction in grades 10, 11 and 12 at one high school and consolidating these grades with the corresponding grades of another high school at the second school, and from transferring the ninth grade of the second school to the first school, such order to continue pending a hearing as to the board's authority to operate a school offering only ninth-grade instruction. *Held:* The application for a restraining order was properly denied, since the reassignment of pupils and teachers necessary to restore the former status of instruction in grades 9 through 12 at both schools would disrupt the operation of the school facilities to the detriment of the students and to the public, and especially so when a substantial part of the school year has passed.

APPEAL by plaintiffs from *Bickett, J.,* in Chambers in WAKE, 31 August 1967.

This is an appeal from an order denying an application for a temporary injunction following a hearing pursuant to an order to the defendant to appear and show cause why it should not be restrained, pending the trial of the action, as prayed for in the complaint.

The complaint prays that the defendant be enjoined, *pendente lite* and permanently, from discontinuing grades ten, eleven and twelve at West Cary High School and grade nine at Cary High School, and that it be ordered to operate both schools for the benefit of pupils living in the Cary school attendance area. In substance, it alleges:

Each plaintiff resides in the Cary school attendance area and is the parent of a child attending a public high school therein. They bring this action on behalf of themselves and others similarly situated, too numerous to be named. For several years two high schools — Cary High School and West Cary High School — have been operated in the Cary school attendance area. On 27 February 1967, the defendant adopted a resolution authorizing the assignment of all ninth grade students in the area to West Cary High School. Thereafter, the plaintiffs learned through the news media that the high schools in the area would be reorganized so that all students in grades ten, eleven and twelve would attend the Cary High School and only those in grade nine would attend West Cary High School. The proposed one grade West Cary High School will not qualify for accreditation and will not constitute a "legally defined high school." This will do irreparable injury to students enrolled

therein. On 7 August 1967, after the plaintiffs' contentions were presented to the defendant, the defendant adopted another resolution purporting to assign to the West Cary High School all ninth grade students and to the Cary High School all tenth, eleventh and twelfth grade students residing in the area. The statutory procedure for the assignment of students has not been followed. The proposed reorganization is "in effect a *de facto* consolidation" of the two high schools, which is not within the authority of the defendant. The threat of irreparable injury to the plaintiffs and their children is immediate and pressing since the schools are scheduled to open on or about 1 September 1967. The plaintiffs have exhausted every available administrative remedy to avoid this irreparable injury.

This suit was instituted 25 August, six days before the schools were to open, and the order directing the defendant to appear and show cause was issued on that date. The hearing was held before Judge Bickett on 31 August 1967, and his order denying the temporary injunction was entered on that date.

A document designated the "answer" of the board, having been verified but not filed at the time of the hearing on the order to show cause, was introduced as an affidavit by the defendant. It states, in substance:

The West Cary High School is only two years old. Prior to the institution of this action, it was "predominantly a Negro high school which had never been accredited." No child of any plaintiff had attended it prior to the institution of this suit. On 27 February 1967, the defendant adopted a resolution authorizing the assignment of all ninth grade students in the Cary school attendance area to the "West Cary Junior High School." During the month of March 1967, students and their parents were furnished forms on which to indicate their choice of the school to be attended by the child. Of the 337 ninth grade students in the area all but four chose, or had chosen for them, attendance at the "former West Cary High School Campus." On 29 May 1967, 330 of the students "who had been assigned to West Cary Junior High School" for the 1967-68 school year, and their parents, signed class registration forms for classes at the "West Cary Junior High School." On 11 August 1967, "notice of assignment" of these students was given by mail. No application for reassignment was made to the defendant by or on behalf of any child, and the ten days allowed therefor expired before the institution of this action. For the year 1967-68, the board proposes to operate "Cary High School," an accred-

ited school consisting of grades ten, eleven and twelve, and "West Cary Junior High School," consisting of the ninth grade only. Students attending the West Cary Junior High School will suffer no injury by reason of such operation, having the right, upon the completion of the ninth grade, to enter, and thereafter graduate from, the accredited Cary High School. The West Cary Junior High School "will offer courses and in every category will exceed the requirements for accreditation." The "educational welfare" of the children in the Cary school attendance area will be promoted and enriched by the proposed operation of the two schools. The North Carolina State Board of Education, upon the recommendation of the defendant, created one school district for all of Wake County and the action of which the plaintiffs complain was "only an assignment of pupils within the same school attendance area according to G.S. 115-176." There has been no consolidation of the two schools.

The matter was heard upon affidavits. The court made detailed findings of fact. Among these findings are the following (summarized, except as otherwise indicated, and renumbered):

(1) In the year 1967, the defendant was confronted with the so-called "Guidelines" promulgated by the Office of Education of the Department of Health, Education and Welfare of the United States.

(2) The defendant, after an extensive investigation, determined, in the exercise of its discretion, that it would be better for the welfare of the pupils and for the efficient operation of the schools to place the eighth and ninth grades in the West Cary High School. Thereafter, upon further investigation, it determined that the facilities of that school could accommodate only the ninth grade pupils. It thereupon adopted a resolution providing for the assignment of all pupils in the ninth grade to the West Cary Junior High School, and all pupils in the tenth, eleventh and twelfth grades to the Cary High School. (The designations, "West Cary High School" and "West Cary Junior High School," refer to the same facilities.)

(3) Thereafter, in order to comply with the Guidelines issued by the United States Commissioner of Education, a freedom of choice plan was inaugurated by the defendant. The result was that 333 out of 337 pupils elected to attend the West Cary Junior High School and 330 of these pupils, together with their parents, signed registration forms setting forth the courses to be taken by them at the West Cary Junior High School during the 1967-68 school year.

(4)  At all times the defendant, "in its consideration of this problem, has acted in good faith, after hearing and consultation with the Cary Advisory Council ` and other local authorities, after consultation with the State Board of Education, the attorneys for the Board of Education and the office of the Attorney General." The actions taken by the defendant "have all been based upon careful investigation, a survey of the situation and after due study and proper deliberation."

(5)  The defendant proceeded to make preparations for the opening and operation of the West Cary Junior High School for the 1967-68 school year, which plans had been completed and, in part, put into effect at the time this action was instituted.

(6)  The defendant, in preparing its educational facilities and making its plans, "has not only acted in good faith but from an educational viewpoint and from the viewpoint of the best interests of the pupils and the best interests of the public schools of the Cary attendance area has adopted the proper course and the best plan available to it under the circumstances and conditions with which the Board has to deal, and in all said matters the Board has acted after due consideration, adequate investigation and according to its best judgment in making a discretionary decision, and said Board has not abused its discretion, and the action taken by said Board is reasonable and proper."

(7)  On 11 August 1967, notice of assignment was sent to all parents of children in the Cary school attendance area, as provided in G.S. 115-177. No appeal to the Wake County Board of Education was taken by any parent or student, as provided by G.S. 115-178.

(8)  Any change in plans when schools are opening for the 1967-68 school year "will create a chaotic condition, cause great confusion in the public schools in the Cary attendance area, will disrupt plans made by pupils as well as plans made by school authorities, and will create great and undue hardship on all concerned with the public schools of the Cary attendance area."

Upon these findings, the court reached certain conclusions, including the following (summarized):

The defendant has not violated G.S. 115-5 or G.S. 115-6. It is not mandatory that a junior high school consist of more than one of the upper grades. The board, in its discretion, may regulate and locate the grades in buildings and facilities as it deems

proper. The court should not substitute its judgment for that of the defendant. The defendant had the authority to make the assignment of pupils to the West Cary Junior High School which it did make. No appeals from such assignment having been entered, the plaintiffs have not exhausted their administrative remedies and are not entitled to any injunctive relief in this action. The defendant has not abused its discretion but it has acted with proper judgment and consideration. A temporary injunction would cause disruption and confusion in the schools and irreparable damage and injury to them and is not ·necessary to preserve any rights of the plaintiffs. The defendant "under the facts and circumstances of this case has complied with the public school law as set forth in Chapter 115 of the General Statutes."

The court thereupon ordered "that the application of the plaintiffs for a temporary restraining order in this cause is hereby denied, refused and disallowed."

*Everett & Creech for plaintiff appellants.*
*Mordecai, Mills & Parker for defendant appellee.*

LAKE, J. This is not an appeal from an assignment of a child to a public school. It appears from the record that some children of some of the named plaintiffs are eligible for enrollment in the ninth grade of a public school and were assigned, properly or not, by the defendant to the school facility herein called the West Cary Junior High School for the 1967-68 school year. In the absence of anything to indicate the contrary, we assume that all such children of such plaintiffs are now enrolled in and are attending that school facility. The record does not show whether some of the plaintiffs also have children who are assigned to and are now enrolled in and attending the Cary High School as pupils in the tenth, eleventh or twelfth grade. However that may be, there is nothing in the record to indicate that any child of any plaintiff, or any other child, is presently assigned to or enrolled in any school facility other than that to which such child, or the parents of such child, requested assignment for the school year of 1967-68. We, therefore, do not have before us, and the superior court did not have before it, any question as to the right of any plaintiff to compel the reassignment and transfer of any child to any school.

The plaintiffs say in their brief:

"The Board has consistently taken the position that its new plan of operation involved only a question of pupil assignment.

The plaintiffs, with equal consistency, have contended that the new plan of operation was really a consolidation undertaken in violation of statutory requirements and that, in any event, there is no authority under State law to operate a school consisting only of the ninth grade."

What the plaintiffs seek in this action is a permanent injunction and an injunction *pendente lite* which will restrain the Board of Education from discontinuing the offering of instruction in grades ten, eleven and twelve at the West Cary Junior High School facility, and in grade nine at the Cary High School facility. To grant them the relief sought would require the defendant, with approximately one-third of the school year already past, to reassign and transfer immediately to the Cary High School facility from the West Cary Junior High School facility enough ninth grade teachers and ninth grade pupils to permit the efficient operation of a ninth grade curriculum at the Cary High School, and, at the same time, to transfer from the Cary High School facility to the West Cary Junior High School facility enough pupils in each of the tenth, eleventh and twelfth grades, and enough qualified teachers for those grades, to permit the efficient operation of the curricula of those grades at the West Cary Junior High School facility. There is nothing in the record to suggest that any parent of any child desires or would accept such reassignment or transfer of such child, or that any teacher would acquiesce in such transfer of his or her activities. It is a matter of common knowledge and, therefore, a matter of which this Court may take judicial notice, that such wholesale reshuffling of students and teachers in the midst of an academic year would entail widespread confusion and disruption in the work of both school facilities.

This suit was instituted six days before the opening of the school term. The hearing before Judge Bickett was had the day before the children and teachers were to commence work at their respective school facilities. Had he then granted the injunction *pendente lite,* as prayed for by the plaintiffs, the two schools would have commenced their year's work in uproar and confusion. To require the issuance of such an order at this time would be far more disturbing to the instruction of the pupils in both schools. In form, the plaintiffs seek a prohibitory injunction. In effect, what they seek would now be a mandatory injunction requiring a reshuffling of students and teachers in order to resume school operations not now in being. While a preliminary mandatory injunction may be issued to restore a status, wrongly disturbed, the issuance of such an order rests in the sound discretion of the court and is generally deemed to

require a clear showing of substantial injury to the plaintiff, pending the final hearing, if the existing status is allowed to continue to such hearing. See *Creel v. Gas Co.*, 254 N.C. 324, 118 S.E. 2d 761; *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E. 2d 388; 28 Am. Jur., Injunctions, § 32.

The plaintiffs contend that the present operation at the West Cary Junior High School facility is beyond the lawful authority of the Board of Education and, therefore, should be enjoined. They rely upon G.S. 115-5 and G.S. 115-6. These statutes provide:

> G.S. 115-5. *"School system defined.* — The school system of each county and city administrative unit shall consist of twelve years of study or grades * * *. The system may be organized in *one of two ways* as follows: The first eight grades shall be styled the elementary school and the remaining four grades, the high school; or if more practicable, *a junior high school may be formed by combining the first year of high school with both the seventh and eighth grades or with the eighth grade alone,* and a senior high school which shall comprise the last three years of high school work. * * *"* (Emphasis supplied.)

> G.S. 115-6. *"Schools classified and defined.* — The different types of schools are classified and defined as follows: * * *

> "(4) A junior high school, that is, a school which embraces not more than the first year of high school with not more than the upper two elementary grades. * * *"

The contention of the plaintiffs that the operation of a school facility, at which only pupils in the ninth grade are enrolled and instructed, is not within the authority of the defendant Board of Education presents a question which is not rendered moot by the opening of the 1967-68 school year since the defendant is now carrying on that operation and proposes to continue to do so at least through the present school year. That is not, however, the question before us on this appeal. The question before us is whether, at this time, the present operation of the two school facilities in question should be disrupted by the issuance of an injunction pending the hearing of the matter in the superior court upon its merits. We think the answer is clearly, "No."

Neither the findings of fact nor the conclusions of law of the superior court, in denying the temporary injunction, will be binding upon that court at the trial of the action upon its merits. Findings and proceedings upon a hearing to determine whether a temporary injunction should be issued are not proper matters for the con-

sideration of the court or jury in passing upon such issues as may arise at the final hearing. *Carroll v. Board of Trade*, 259 N.C. 692, 131 S.E. 2d 483; *Gene's, Inc. v. Charlotte*, 259 N.C. 118, 129 S.E. 2d 889; *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116; *Fremont v. Baker*, 236 N.C. 253, 72 S.E. 2d 666; *Grantham v. Nunn*, 188 N.C. 239, 124 S.E. 309. Similarly, the decision of this Court upon an appeal from an order denying a temporary injunction does not determine any other right of the parties. We are not to be understood as expressing in this opinion any view as to any contention of the plaintiffs other than their contention that they are entitled to the issuance of a temporary injunction requiring the defendant to reorganize the schools in question pending the final hearing of the matter in the superior court. *Conference v. Creech*, 256 N.C. 128, 123 S.E. 2d 619; *Church v. College*, 254 N.C. 717, 119 S.E. 2d 867; *Service Co. v. Shelby*, 252 N.C. 816, 115 S.E. 2d 12.

An application for a temporary injunction is ordinarily addressed to the sound discretion of the court. *Conference v. Creech, supra; Huskins v. Hospital, supra*. While this Court, upon an appeal from the granting or denial of a temporary injunction, is not bound by the findings of fact in the court below and may review the evidence and make its own findings of fact, the burden is upon the appellant to show error by the lower court. *Conference v. Creech, supra; Whaley v. Taxi Company*, 252 N.C. 586, 114 S.E. 2d 254.

It is not error to deny an application for a temporary injunction where the injury likely to be sustained by the plaintiff from the continuance of the conduct of which he complains, pending the final hearing of the matter, is substantially outweighed by the injury which will be done the defendant by the prevention of such conduct, during the litigation, if it is ultimately determined that the defendant had the right to engage in it. *Conference v. Creech, supra; Service Co. v. Shelby, supra; Huskins v. Hospital, supra*. It is also proper for the court to take into account probable injuries to persons not parties to the action and to the public if such an injunction were to be issued. *Jones v. Lassiter*, 169 N.C. 750, 86 S.E. 710. "The rule of 'balancing conveniences' is that an injunction will not usually be granted or continued where 'it will do more mischief and work greater injury than the wrong which it is asked to redress.' " McIntosh, North Carolina Practice and Procedure, 2d ed., § 2211.

We find no error in the finding and conclusion of the superior court that to restrain the Board of Education, on the eve of the opening of the public schools, from pursuing a program for their operation, announced by it several months before and known during the interval by the plaintiffs, would cause more damage to the

public than would the continuation, during the litigation of the operation to which the plaintiffs object. Furthermore, the balance is now tipped even more in favor of the defendant by reason of the actual commencement of the operation in question and the passage of a substantial part of the current school year. The school operation which the plaintiffs asked the superior court to preserve has now been changed. While such alteration of the former status pending an appeal does not necessarily prevent a reversal of the lower court's denial of a temporary injunction, it is a circumstance to be considered by the appellate court, especially where, as here, to restore the former condition of things would disrupt the operation of a school and thereby jeopardize the interests of the children enrolled therein and the interests of the public in their education. See: McIntosh, North Carolina Practice and Procedure, 2d ed., § 2221; 28 Am. Jur., Injunctions, § 12.

As Parker, J., now C.J., said in *Whaley v. Taxi Company, supra,* "Appellants have not shown that the denial of their motion for an interlocutory injunction was 'contrary to some rule of equity, or the result of improvident exercise of judicial discretion.'"

Affirmed.