JOHN E. MARSHALL, MARNA J. MARSHALL, DEVON G. BELL, RHONDA T. ROGERS, EDWARD L. HOWELL, AMON G. STEWART, BETTY J. STEWART AND G.C. BROWN v. ERNEST W. MILLER, AND WIFE, JANE D. MILLER, INDIVIDUALLY AND D/B/A SPANISH TRAILS, ALIAS SPANISH TRAILS MOBILE HOME PARK, AND IRA GROSSMAN

No. 7918DC1113

(Filed 15 July 1980)

1. **Landlord and Tenant § 6.1– leased spaces in trailer park – facilities and services furnished under lease – credibility of witnesses in issue – directed verdict improper**

In an action to recover damages for breach of agreements under which defendants leased spaces in a trailer park to plaintiffs', the trial court erred in directing verdict for plaintiffs since issues of credibility were raised where the evidence tended to show that some of the plaintiffs had previously had written leases; other plaintiffs had never had written leases but had moved into and remained at the park only under oral agreements that they pay monthly rental; none of the plaintiffs relied upon a written lease agreement; to establish the nature and extent of defendants' agreements to furnish facilities and services in exchange for the payment of monthly rental, plaintiffs presented evidence of newspaper advertisements, rules and regulations promulgated by defendants, and oral representations made by park managers and employees; and to establish defendants' breach of agreements, plaintiffs presented their own testimony and that of other witnesses.

2. **Trusts § 19– mobile home parts retained by defendants – insufficiency of evidence of constructive fraud**

In an action to recover for mobile home wheels, tires, and axles which defendants allegedly wrongfully sold or converted to their use, the trial court erred in imposing a constructive trust and in directing verdict that defendants had breached the trust, since evidence presented by defendants, if believed, would tend to show that the contested tires, wheels, and axles were never included in the original sales of mobile homes to plaintiffs; evidence presented by plaintiffs, if believed, would tend to establish either that the defendants had failed to deliver the contested items as agreed at the time of the original sales of the mobile homes or that, although delivered at that time, they were later retained by defendants and stored in another area of the trailer park; and therefore no constructive trust arose on this evidence.

3. **Unfair Competition § 1– unfair or deceptive trade practice – rental of mobile home spaces – trade or commerce**

Rental of spaces in a mobile home park is trade or commerce within the meaning of G.S. 75-1.1.

Marshall v. Miller

4. **Unfair Competition § 1– single course of conduct – breach of contract – unfair and deceptive trade practice – damages for both improper**

Where the same course of conduct gives rise to a traditionally recognized cause of action, as, for example, an action for breach of contract, and as well gives rise to a cause of action for violation of G.S. 75-1.1, damages may be recovered either for the breach of contract or for violation of G.S. 75-1.1, but not for both.

5. **Unfair Competition § 1– furnishing services in trailer park – no bad faith – no unfair or deceptive trade practice – treble damages inappropriate**

Absent a finding of some bad faith, the jury's answer as to whether defendant, without the intent or ability to perform, led plaintiffs to believe that he would provide certain facilites in a trailer park would not support a violation of G.S. 75-1.1 and an award of treble damages under G.S. 75-16.

6. **Unfair Competition § 1– treble damages sought by private party – good faith relevant**

Although good faith may be irrelevant where injunctive relief is sought by the Attorney General under G.S. 75-14, it should be relevant where a private party seeks treble damages under G.S. 75-16.

APPEAL by defendants from *Alexander, (Elreta M.), Judge.* Judgment entered 5 October 1978 in District Court, GUILFORD County. Heard in the Court of Appeals 15 May 1980.

Plaintiffs, residents in Spanish Trails, a mobile home park owned and operated by the defendant Ernest W. Miller, brought this action on 7 October 1977 seeking to recover damages for (1) breach of agreements under which defendants leased to the several plaintiff's spaces in the park for use as sites for their respective mobile homes, (2) breach of agreements under which defendants sold mobile homes to the several plaintiffs, and (3) violations of G.S. 75-1.1(a). Defendants filed answer in which they denied violating any agreement with plaintiffs, denied that any plaintiff held under a long-term lease in the park, admitted that defendants sold trailers to plaintiffs but denied any breach of the sales contracts, and denied violations of G.S. 75-1.1(a). Defendants also denied that the defendant Jane D. Miller had any involvement whatsoever in the park as partner, agent, or owner.

At trial before a jury plaintiffs presented evidence in the form of advertisements of the park facilities made by defendants, printed rules and regulations furnished by defendants to

persons renting spaces in the park, and testimony as to oral representations made by defendants concerning the facilities, services, and amenities which a person becoming a resident in the park could expect to enjoy, and they presented evidence of defendants' continued failure to furnish the facilities, services, and amenities as represented. Plaintiffs also presented evidence tending to show that included in the sale of each mobile home made by defendants to the several plaintiffs were wheels, tires, and axles; that these had been affixed to the mobile homes when they were brought into the park but had been detached and removed by defendants when the homes were set up on the respective sites in the park occupied by the several plaintiffs; that when plaintiffs inquired about the wheels, tires, and axles they were first told that these were being stored for them in a storage area in the park but were later told that they had been sold; and that defendants had refused, after demand made upon them, to deliver to plaintiffs either the wheels, tires, and axles or the proceeds from their sale.

Defendants presented evidence to show that at the time of the commencement of this action none of the plaintiffs held under a long-term lease but each occupied space in the park only under a month-to-month tenancy, that the facilities and services furnished to residents in the park were substantially as they had been represented except in instances where, through no fault of defendants, this could not be done, and that operation of the park had resulted in a substantial loss to its owner. Concerning the wheels, tires, and axles, defendants' testimony tended to show that these items had not been included in the original sale of the mobile homes.

At close of the evidence the court permitted plaintiffs to amend their complaint to allege, as an alternative to the claim for breach of contract of sale of the mobile homes, that defendants had "willfully failed to honor the trust created by the delivery of the plaintiffs' tires, wheels and axles to the defendants as alleged."

The court submitted issues which were answered by the jury as follows:

1. Was Mrs. Jane Miller a partner in Spanish Trails all of the times complained of as alleged?

ANSWER: YES.

2. How much, if any, are the following plaintiffs entitled to recover of the defendant for breach of the constructive trust to return the tires, wheels and axles?

(a) Mrs. Betty Stewart.

ANSWER: $1,350.00

(b) Mr. G.C. Brown

ANSWER: $900.00

(c) Mr. E.L. Howell

ANSWER: $900.00

(d) Mr. Devon G. Bell

ANSWER: $900.00

3. How much, if any, are the following plaintiffs entitled to recover of the defendant for breach of lease from October 7, 1974 to October 7, 1977?

(a) Mr. and Mrs. John E. Marshall

ANSWER: $630.00

(b) Mr. and Mrs. A.G. Stewart

ANSWER: $630.00

(c) Mrs. Rhonda T. Rogers

. .. . . . .

ANSWER: $630.00

(e) Mr. Edward L. Howell

ANSWER: $577.50;

4. Did the defendant, after October 7, 1974, without the intent and/or the ability to perform lead the plaintiffs or any of them to believe that he would provide the following equipped facilities for their use, reasonable wear and tear accepted (sic)?

(a) Two playgrounds

ANSWER: YES.

(b) One basketball court

ANSWER: YES.

(c) One swimming pool

ANSWER: YES.

(d) Household water

ANSWER: NO.

(e) Adequate garbage facilities and pickup

ANSWER: YES.

(f) Complete yard care, that is, mowing and trimming

ANSWER: YES.

(g) Paved streets

ANSWER: YES.

(h) Lighted streets

ANSWER: YES.

(i) Common facilities

ANSWER: YES.

5. If so, has the defendant within the period specified, that is, after October 7, 1974, failed to reasonably provide any and all of the following:

(a) Two playgrounds

ANSWER: YES.

(b) One basketball court

ANSWER: YES.

. . . . . .

ANSWER: YES.

(d) Household water

ANSWER:

(e) Adequate garbage facilities and pickup

ANSWER: YES.

(f) Complete yard care, that is mowing and trimming

ANSWER: YES.

(g) Paved streets

ANSWER: YES.

(h) Lighted streets

ANSWER: YES.

(i) Common facilities

ANSWER: YES.

6. If so, did any or all of the following plaintiffs reasonably expect the defendant to comply with the foregoing after October 7, 1974?

(a) Mr. and Mrs. John E. Marshall

ANSWER: YES.

(b) Mr. Devon G. Bell

ANSWER: YES.

(c) Ms. Rhonda T. Rogers

ANSWER: YES.

(d) Mr. Edward L. Howell

ANSWER: YES.

(e) Mr. and Mrs. Amon G. Stewart

ANSWER: YES.

(f) Mr. G.C. Brown

ANSWER: YES.

7. If so, what, if any, damages have plaintiffs sustained by reason thereof, such plaintiffs being the ones to which you answered "yes" in the preceding Issue No. 6?

(a) Mr. and Mrs. John E. Marshall

ANSWER: $540.00

Marshall v. Miller

(b) Mr. Devon G. Bell

ANSWER: 540.00

(c) Ms. Rhonda T. Rogers

ANSWER: $540.00

(d) Mr. Edward L. Howell

ANSWER: 495.00

·  ·  ·  ·  ·  ·

ANSWER: $540.00

(f) Mr. G.C. Brown

ANSWER: $540.00

The court entered judgment in which, based on the findings of the jury with respect to Issues 4, 5, 6, and 7, the court concluded that

the acts of the defendants complained of by the plaintiffs constitute unfair or deceptive acts or practices in or affecting commerce within the meaning of North Carolina General Statues § 75-1.1, and therefore, pursuant to North Carolina General Statues § 75-16, the damages assessed by the jury in answer to Issue No. 7 above should be and are hereby trebled.

Accordingly, the court entered judgment that

1. The plaintiffs, Mr. and Mrs. John E. Marshall, have and recover of the defendants the sum of $2,250.00;

2. The plaintiffs, Mr. and Mrs. Amon Glenn Stewart, have and recover of the defendants the sum of $3,600.00;

3. The plaintiff, Ms. Rhonda T. Rogers, have and recover of the defendants, the sum of $2,250.00;

4. The plaintiff, Mr. G.C. Brown, have and recover of the defendants the sum of $3,150.00;

5. The plaintiff, Mr. Devon G. Bell, have and recover of the defendants the sum of $3,150.00;

6. The plaintiff, Mr. Edward L. Howell, have and recover of the defendants the sum of $2,962.50;

The court also taxed the costs of the action, including a fee of $5787.50 for plaintiffs' attorney, against the defendants.

From this judgment, defendants appealed.

*Edwards, Greeson, Weeks & Turner, by Joseph E. Turner, attorneys for plaintiff appellees.*

*Kathryn K. Hatfield, attorney for defendant appellants.*

PARKER, Judge.

[1] In regard to plaintiffs' first claim for relief, being the claim to recover damages for breach of agreements under which defendants leased spaces in the park to several plaintiffs, the court announced at the close of the evidence that it would "grant the motion of the plaintiffs for a directed verdict in regard to the breach of lease as to each of the plaintiffs from the period of October 7, 1974, to October 7, 1977, and submit to the jury the issue of how much damages, if any, is each of the plaintiffs entitled to recover therefor." Consistent with the ruling, the court instructed the jury that "the court has concluded that there was a substantial breach of the lease agreement between the parties." The court then submitted to the jury in regard to plaintiffs' first claim for relief only Issue No. 3 as to what amount of damages, if any, each plaintiff was entitled to recover for breach of lease. In directing a verdict in plaintiffs' favor on the issue of breach of lease, the court committed error.

In prosecuting their first claim for relief, plaintiffs had the burden of proving first, the nature and extent of the contrac-

Marshall v. Miller

tual agreements made between the parties concerning facilities and services to be furnished by defendants in exchange for payment of monthly rental by plaintiffs and, second, defendants' breach of those agreements. By directing verdict in plaintiffs' favor on those issues, the court directed verdict in favor of the parties having the burden of proof. Under some circumstances, this may be proper. *See Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). We do not find it so in the present instance. Evidence in this case shows that, although some of the plaintiffs previously had written leases, other plaintiffs had never had written leases, but had moved into and remained at the park only under oral agreements that they pay monthly rental. None of the plaintiffs relied upon a written lease agreement. To establish the nature and extent of defendants' agreements to furnish facilities and services in exchange for the payment of monthly rental, plaintiffs presented evidence of newspaper advertisements, rules and regulations promulgated by defendants, and oral representations made by park managers and employees. To establish defendants' breach of the agreements, plaintiffs presented their own testimony and that of other witnesses. Although much of plaintiffs' evidence was uncontradicted, issues of credibility remained for resolution by the jury, and it was error for the court to direct verdict in plaintiffs' favor.

[2] For their second claim for relief, each of the plaintiffs, Stewart, Brown, Howell, and Bell, alleged in their original complaint that after the defendants had sold to each of them a mobile home, including the undercarriage consisting of axles, wheels, and tires, defendants removed these items and either sold or otherwise intentionally converted them to defendants' use. Plaintiffs prayed to recover damages in the amount of the fair market value of the items allegedly wrongfully taken by the defendants. After close of the evidence, the court permitted the plaintiffs to amend their complaint to allege as an alternative to their second claim for relief that defendants had "wilfully failed to honor the trust created by the delivery of the plaintiffs' tires, wheels and axles to the defendants as alleged." The court then allowed the plaintiffs' motion for a directed verdict "as to the breach of the constructive trust to return the wheels, tires and axles." Consistent with these rulings, the court submitted

to the jury in regard to plaintiffs' second claim for relief only Issue No. 3 as to what amount, if any, the named plaintiffs were entitled to recover of the defendants "for breach of the constructive trust to return the tires, wheels and axles." In imposing a constructive trust and in directing verdict that defendants had breached the trust, the court committed error.

No constructive trust arose on the evidence in this case. Evidence presented by defendants, if believed, would tend to show that the contested tires, wheels, and axles were never included in the original sales of the mobile homes to the plaintiffs. Evidence presented by plaintiffs, if believed, would tend to establish either that the defendants had failed to deliver the contested items as agreed at the time of the original sales of the mobile homes or that, although delivered at that time, they were later retained by defendants and stored in another area of the park. If the latter, the relationship between the named plaintiffs and the defendants with respect to such items became that of bailors and bailees, in which event defendants' liability for loss or damage to the property would be governed by a determination of the question of for whose benefit the property was being stored. *See Clott v. Greyhound Lines,* 278 N.C. 378, 180 S.E. 2d 102 (1971). Plaintiffs had the burden of proving either their original claim that defendants had breached their contracts of sale by failing to deliver the contested items as agreed, or that defendants had breached their duty as bailees of the contested property. It was error for the court to impose a constructive trust and to direct verdict that defendants had breached the trust thus imposed.

We now turn to plaintiffs' claim based upon defendants' alleged violations of G.S. 75-1.1(a). At the time defendants committed the acts which plaintiffs allege as the basis of their claim, the statute read as follows:

Marshall v. Miller

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.[1]

[3] Interpreting this statute, this Court has held that the rental of residential housing is "trade or commerce" under G.S. 75-1.1. *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977). We now hold that rental of spaces in a mobile home park is also "trade or commerce" within the meaning of the statute. The question remains whether defendants' conduct constituted "unfair or deceptive acts or practices" in the conduct of that trade or commerce. To resolve this question, the trial court, complying with the directive of our Supreme Court in *Hardy v. Toler*, 288 N.C, 303, 218 S.E. 2d 342 (1975), ruled that it was for the jury to determine the facts, and based on the jury's findings, the court would then determine as a matter of law whether defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce. For this purpose the court submitted Issues 4, 5, 6, and 7 to the jury, and on the basis of the jury's answers to those issues, the court ruled as a matter of law that defendants had violated G.S. 75-1.1 We find error both in the issues submitted and in the court's instructions with regard thereto.

[4] While charging the jury with respect to Issue No. 7, which concerned the amount of damages which the jury could find

---

[1]Effective 27 June 1977, which was prior to institution of the present action but subsequent to the commission by defendants of the acts complained of, G.S. 75-1.1(a) and (b) were rewritten by Ch. 747 of the 1977 Session laws to read as follows:

G.S. 75-1.1

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

plaintiffs sustained because of defendants' alleged violations of G.S. 75–1.1(a), the court instructed the jury:

> Now the fact that you will answer — would have answered something for the breach of lease, don't worry about that. *You may use some of the same elements in answering this.*

> This becomes a question of law. If you decide — you get to this, you are not required to get to this issue, the burden is on the plaintiffs to satisfy you from the evidence and greater weight thereof, you should get to this issue, *you should answer this in some sum you find the plaintiffs sustained or any of them by reason of the defendants' failure to provide the facilities listed in the preceding items.* (Emphasis added).

In giving this instruction, the court committed error. The effect of this instruction was to permit the jury to assess damages against the defendants twice for the same default. The error was compounded when the court, acting under G.S. 75-16, gave judgment for treble the amount of the damages fixed by the jury's answer to issue No. 7 in addition to the amounts already fixed by the jury's answer to Issue No. 3. The net result is that some of the plaintiffs were given judgment for quadruple damages. We do not believe that the legislature intended any such result when it enacted G.S. 75-1.1(a). Where the same course of conduct gives rise to a traditionally recognized cause of action, as, for example, an action for breach of contract, and as well gives rise to a cause of action for violation of G.S. 75-1.1, damages may be recovered either for the breach of contract, or for violation of G.S. 75-1.1, but not for both.

[5]  We also find error in the form of Issue No. 4 as submitted to the jury. It was possible for the jury to answer that issue in the affirmative, thus furnishing a portion of the basis on which the court concluded there had been a violation of G.S. 75-1.1, if the jury found that defendants, even though acting in good faith, became financially unable to fulfill all of their contractual obligations. We hold that, absent a finding of some bad faith, the jury's answer to Issue No. 4 would not support a violation of

G.S. 75-1.1 and an award of treble damages under G.S. 75-16. In so holding, we note the distinction between the private method of enforcement and the public methods of enforcement provided for in the legislative scheme of Chapter 75.

The present action based on a violation of G.S. 75-1.1 was brought pursuant to G.S. 75-16, which grants a private right of action to any person injured by any act in violation of Chapter 75 of the General Statutes. Chapter 75 also contains provisions for enforcement of G.S. 75-1.1 in suits brought by the Attorney General, provisions which substantially follow the federal scheme for enforcement of § 5 of the Federal Trade Commission Act. G.S. 75-14 (actions brought by Attorney General to obtain mandatory orders); G.S. 75-15.2 (imposition of civil penalties in suits brought by the Attorney General where the "acts or practices which constituted the violation were, when committed, specifically prohibited by a court order or knowingly violative of a statute."). Unlike our own statutory scheme, however, the FTC Act confers no private right of action upon an injured party, *Federal Trade Commission v. Klesner*, 280 U.S. 19, 50 S. Ct. 1, 74 L. Ed. 138 (1929), and the sole means of enforcement is through the Federal Trade Commission which is empowered to issue a complaint whenever it has reason to believe that a violation of the Act has occurred and that a proceeding "would be to the interest of the public." 15 U.S.C. § 45(b). The issuance of a cease and desist order by the FTC pursuant to such a complaint is warranted upon proof that an act or practice has a capacity or tendency to deceive, that it offends public policy, or that it is substantially injurious to consumers, *see, e.g., Spiegel, Inc. v. F.T.C.*, 540 F. 2d 287 (7th Cir. 1976); *Koch v. Federal Trade Commission*, 206 F. 2d 311 (6th Cir. 1953); *D.D.D. Corporation v. Federal Trade Commission*, 125 F. 2d 679 (7th Cir. 1942), and the presence of good faith is immaterial to the question of whether an order should issue. *Koch v. Federal Trade Commission, supra.*

[6] Our Supreme Court has held that our courts should look for guidance to federal decisions interpreting the FTC Act. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980); *Edmisten, Attorney General v. Penney Co.*, 292 N.C. 311, 233 S.E. 2d 895 (1977). However, to the extent that good

or bad faith has been held irrelevant to a determination of a violation of the FTC Act, the applicability of that principle in suits based on alleged violations of our own G.S. 75-1.1 should be determined with reference to our dual statutory scheme of enforcement. Thus, although good faith may be irrelevant where *injunctive* relief is sought by the Attorney General under G.S. 75-14, it should be relevant where a private party seeks *treble damages* under G.S. 75-16. *See, Trust Co. v. Smith*, 44 N.C. App. 685, 262 S.E. 2d 646 (1980); *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1049 (E.D.N.C. 1980). In the former type of case, a defendant against whom a mandatory order is issued is thereafter on notice that civil penalty may be imposed should his conduct continue, and a defendant who knowingly violates G.S. 75-1.1 and must pay a civil penalty pursuant to G.S. 75-15.2 needs no such notice. In the latter type of case, however, treble damages should not be assessed against a defendant who acts in good faith where he is not otherwise on notice that his conduct violates G.S. 75-1.1. This interpretation of the legislative intent is supported by the language employed by the legislature in enacting G.S. 25A-44(4),which made the "knowing and willful violation" of any provision of G.S. Ch. 25A, the Retail Installment Sales Act, an unfair trade practice under G.S. 75-1.1.

For the errors above noted, defendants are entitled to a

New Trial.

Judges VAUGHN and ERWIN concur.