AMERICAN ALUMINUM PRODUCTS, INC. v. JOHN RICHARD POLLARD AND CALVIN W. MORRISON

No. 8910SC433

(Filed 20 March 1990)

1. **Appeal and Error § 16.1 (NCI3d)— motion for new trial after appeal notice—no jurisdiction in trial court**

    The trial court did not err by denying defendant's motion for a new trial where judgment was rendered in open court on 2 August 1988, defendants gave oral notice of appeal at that time, and defendants moved for a new trial on 9 August 1988. The trial court was without jurisdiction to hear the motion.

    **Am Jur 2d, New Trial §§ 17, 18, 19, 20.**

2. **Contracts § 34 (NCI3d)— malicious interference with contract— aluminum products salesmen—evidence sufficient**

    There was sufficient evidence of interference with contractual relations where the trial judge properly found the existence of a contract and that the parties agreed to have plaintiff complete the work and for the contractor to pay agreed upon costs for completion of the work; there were mutual

promises sufficient to support the existence of a contract in that plaintiff agreed to sell aluminum products and the contractors agreed to purchase those products; there was evidence that defendants had intentionally induced third parties not to perform the alleged agreements with plaintiff in that defendants had previously approached the contractors as representatives of plaintiff and then sought to undercut plaintiff's business with the contractors by inducing the contractors to terminate the contracts; and recent cases have held that one need not be an outsider in order to be held liable for malicious interference with the contract.

**Am Jur 2d, Interference § 41.**

3. **Unfair Competition § 1 (NCI3d) — malicious interference with the contract — unfair or deceptive trade practice — double recovery not allowed**

There was no error in an action for malicious interference with contract and unfair or deceptive trade practices where the court calculated lost profits and then trebled that amount, so that damages for both tortious interference with contract and violation of N.C.G.S. § 75-1.1(a) were not allowed.

**Am Jur 2d, Damages § 35; Interference §§ 57, 58, 61.**

4. **Judgments § 10 (NCI3d) — consent order — preliminary injunction — relied on for findings — harmless error**

Although the trial court in an action for malicious interference with contract and unfair and deceptive trade practices erred by taking judicial notice of a consent order where the purpose of the order was to preserve the status quo in view of the motion for preliminary injunction and it was not entered into to dispose of any facts critical to disposition of the issues which were to be tried, the error was harmless because the judge relied on the order in finding a fact alleged in plaintiff's complaint and admitted in defendants' answers.

**Am Jur 2d, Judgments § 1084.**

5. **Master and Servant § 9 (NCI3d) — action to recover overpayment of commissions — evidence sufficient to support findings**

In an action arising from the movement of salesmen from one company to another, there was sufficient evidence to sup-

AMERICAN ALUMINUM PRODUCTS v. POLLARD

[97 N.C. App. 541 (1990)]

port the trial court's finding that defendants were liable for the entire amount of commission overpayment.

**Am Jur 2d, Master and Servant § 86.**

APPEAL by defendants from judgment entered 11 October 1988 by *Judge B. Craig Ellis* in WAKE County Superior Court. Heard in the Court of Appeals 18 October 1989.

This is an action for tortious interference with contract, unfair and deceptive trade practices, breach of common law fiduciary duties, and overpayment of commissions.

Plaintiff, a North Carolina corporation, is in the business of marketing, sales and installation of aluminum products. Plaintiff employed defendants as salesmen in its Commercial Contractor Division.

As salesmen, defendants' principal job duties included acquiring sales commitments or contracts with general contractors for particular jobs. As compensation, defendants received draws against their commissions which were 10% of sales that were consummated as a result of their efforts.

During November and December 1985, the months just prior to their resignations, defendants entered numerous contracts or commitments with contractors and subsequently received draws against their commissions for these sales. Additionally, defendant Pollard received $1,150 for sales to new contractors during November and December 1985. Defendants listed their sales information on their call reports and their sales and weekly log sheets and submitted it to their immediate supervisor, Glynn Queen.

On 5 January 1986 defendants resigned from their positions with plaintiff and began to work with Hobbs Guttering Company (Hobbs) as salesmen of aluminum gutters. Defendants also became partners with Hobbs, each with a 25% interest in his company.

At trial, the court found that the sales consummated and contracted for by defendants during November and December 1985 were valid contracts between plaintiff and the contractors. The trial court also found that since defendants began their employment with Hobbs, defendants had induced contractors Vernon Wall, Ed Smith, Brad Pulley and Ken Lunsford not to perform contracts with plaintiff and to enter contracts with Hobbs for the same work.

The trial court found that plaintiff suffered losses totalling $1,400 as a result of losing the benefit of those sales. The trial court further found that several sales for which defendant had received commissions from plaintiff were performed by defendants during their employment with Hobbs and accordingly defendants had been overpaid. Specifically, defendant John Pollard had received total draws of $14,681.40 but had only earned $10,301.11. Defendant Calvin Morrison had received draws of $16,324 but had only earned $7,185.63. The trial court found that it would be unjust for defendants to retain the overpayment especially in view of defendants' admissions in a consent order dated 24 January 1986. This consent order was entered to resolve plaintiff's motion for a preliminary injunction.

The trial court concluded that "Defendants did tortiously interfere with the contracts of the Plaintiff by inducing the aforementioned contractors or customers of the Plaintiff not to perform their contracts with the Plaintiff." The trial court also concluded that defendants' acts constituted unfair and deceptive trade practices in violation of G.S. 75-1.1 *et seq.* The trial court further found that both defendants were overpaid commissions. The trial court then awarded plaintiff $1,400 for loss profits on contracts with Wall, Pulley, Smith and Lunsford and then trebled these damages pursuant to G.S. 75-1.1 *et seq.* The trial court also awarded plaintiff costs and interest as well as attorney's fees. In addition, the trial court awarded plaintiff $9,138.37 from defendant Morrison and $4,380.30 from defendant Pollard for overpayment of commissions. The trial court denied defendants' motion for new trial. Defendants appeal.

*Crisp, Davis, Schwentker, Page & Currin, by Cynthia M. Currin, for plaintiff-appellee.*

*Kirk, Gay, Kirk, Gwynn & Howell, by Philip G. Kirk, for defendant-appellants.*

EAGLES, Judge.

## I. MOTION FOR NEW TRIAL

[1] Defendants first assign as error the trial court's denial of their motion for a new trial pursuant to G.S. 1A-1, Rule 59.

Initially, we note that judgment here was rendered in open court on 2 August 1988. At that time defendants gave oral notice of appeal. Defendants subsequently moved for a new trial on 9 August 1988 and the trial court denied the motion on 28 November 1988.

AMERICAN ALUMINUM PRODUCTS v. POLLARD

[97 N.C. App. 541 (1990)]

"For many years it has been recognized that as a general rule an appeal takes the case out of the jurisdiction of the trial court." *Wiggins v. Bunch*, 280 N.C. 106, 108, 184 S.E.2d 879, 880 (1971). The rule in *Wiggins* is subject to two exceptions and one qualification:

"The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1) during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that 'the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned' and thereby regain jurisdiction of the cause. [Citation omitted.]"

*Estrada v. Jaques*, 70 N.C. App. 627, 637-8, 321 S.E.2d 240, 247 (1984), quoting *Bowen v. Hodge Motor Co.*, 292 N.C. 633, 635-36, 234 S.E.2d 748, 749 (1977). Even where notices of appeal are filed on the same day as the motion for a new trial, the trial court is without jurisdiction to rule on the motion. *Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 363 S.E.2d 643 (1988), *writ of supersedeas denied and temporary stay denied*, 321 N.C. 745, 366 S.E.2d 871 (1988), *disc. rev. denied*, 322 N.C. 113, 367 S.E.2d 917 (1988).

Here defendants moved for a new trial *after* giving notice of appeal. None of the *Bowen* exceptions apply. Accordingly, the trial court was without jurisdiction to hear the motion for new trial and this assignment of error must fail.

II. INTERFERENCE WITH CONTRACTUAL RELATIONS

[2] Defendants next assign as error the trial court's denial of a motion to dismiss and argue that there was insufficient evidence as to interference with contractual relations.

In order to hold a person liable for interference with contractual relations plaintiff must offer evidence tending to show: "(1) a valid contract existed between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954).

Defendants contend that plaintiff has not produced evidence to prove elements (1) and (3). Defendants argue that no contractual rights accrued based on work orders submitted by salesmen after the salesmen had entered a verbal agreement with contractors. They contend that there was no "meeting of the minds" between plaintiff and the contractors and that even if oral contracts are shown, the contracts are not supported by consideration. We disagree.

A valid contract can only exist when the parties " 'assent to the same thing in the same sense, and their minds meet as to all terms.' " *Normile v. Miller and Segal v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (citation omitted). "This assent, or meeting of the minds, requires an offer and acceptance in the exact terms and that the acceptance must be communicated to the offeror." *Id.* "An offer may invite an acceptance to be made by merely an affirmative answer, or by performing or refraining from performing a specified act, or may contain a choice of terms from which the offeree is given the power to make a selection in his acceptance." *Durant v. Powell*, 215 N.C. 628, 633, 2 S.E.2d 884, 887 (1939), quoting Rest. of Law of Contracts, American Law Inst., Volume 1, Sec. 29.

At trial Mr. Queen, plaintiff's employee who supervised defendants, testified about the standard industry procedure for the sale of aluminum products. He testified that customarily the salesmen would approach contractors to discuss installation of aluminum products. If the contractor agreed, then the salesmen would make appropriate measurements and then quote a price. If that price met the contractor's approval, the parties would then shake hands and the salesmen would return to the office and fill out a work order. Here the parties agreed not only to have the plaintiff complete the work but also agreed for the contractor to pay agreed upon costs for completion of the work. The trial judge properly found this sufficient to establish that a contract existed.

Defendants further contend that even if a contract existed there was no consideration. "It has been held that 'there is consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.' " *Penley v. Penley*, 314 N.C. 1, 14, 332 S.E.2d 51, 59 (1985), quoting 17

C.J.S. 426 and cases cited therein. Here, plaintiff and the contractors exchanged mutual promises. Plaintiff agreed to sell aluminum products and the contractors agreed to purchase those products. These mutual promises were sufficient consideration to support the existence of a contract.

Next, defendants contend that plaintiff did not introduce sufficient evidence for the judge to find that defendants " 'intentionally induced' third parties not to perform the alleged agreements with plaintiff." Plaintiff's evidence was that before defendants left its employment, plaintiff had contracts for work to be performed for several of the contractors and that defendants while working with Hobbs subsequently performed the work contracted for. As a result, plaintiff could not perform the work as agreed upon.

"Under North Carolina law, a third party who induces one party to terminate or fails to renew a contract with another may be held liable for malicious interference with the party's contractual rights if the third party acts without justification." *Fitzgerald v. Wolf*, 40 N.C. App. 197, 199, 252 S.E.2d 523, 524 (1979). "A person is justified in inducing the termination of a contract of a third party if he does so for a reason reasonably related to a legitimate business interest." *Id.* at 200, 252 S.E.2d at 524. Here, defendants had no legitimate business interests in those contracts. They left plaintiff's employ and then approached plaintiff's customers with whom they had previous dealings and urged the customers to abrogate their contracts with plaintiff and "get their gutters done by someone else if they so desired." Where defendants had previously approached the contractors as representatives of plaintiff and then sought to undercut plaintiff's business with the contractors by inducing the contractor to terminate the contract, defendants should be liable for the tort of malicious interference with contract.

Finally, defendants contend that because they were not "outsiders," they cannot be liable for interference with contractual relations. Defendants argue that *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976), requires that a person accused of tortious interference with contract be an outsider. Defendants argue that the term "outsider" "appears to connote one who was not a party to the terminated contract and who had no legitimate interest of his own in the subject matter thereof." *Id.* at 87, 221 S.E.2d at 292. Defendants argue that at the time the contracts were formed they were not outsiders and had a legitimate interest in the subject

matter because their commissions from plaintiff were derived from the work orders.

Recent cases hold that one need not be an outsider in order to be held liable for malicious interference with contract. *See United Laboratories, Inc. v. Kuykendall, supra; Privette v. University of North Carolina at Chapel Hill*, 96 N.C. App. 124, 385 S.E.2d 185 (1989); *Murphy v. McIntyre*, 69 N.C. App. 323, 317 S.E.2d 397 (1984), citing *Smith v. Ford Motor Company*, 289 N.C. 71, 221 S.E.2d 282 (1976). Though defendants' status as an outsider or nonoutsider is not determinative here, we note that defendants did not begin to interfere with plaintiff's contracts until after resigning from their employment with plaintiff. This assignment of error must also fail.

### III.  UNFAIR AND DECEPTIVE TRADE PRACTICES

[3]  Defendants next assign as error the trial court's finding that defendants were liable under both G.S. 75-1.1 and for tortious interference with contracts. Defendants contend that in *Marshall v. Miller*, 47 N.C. App. 530, 268 S.E.2d 97 (1980), *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981), this court held that a plaintiff may recover damages for either breach of contract or for violation of G.S. 75-1.1 but not for both. While we note that defendants have correctly articulated the holding in *Marshall*, we find the holding inapplicable here because the facts are clearly distinguishable.

In *Marshall*, defendants leased spaces in a trailer park to plaintiffs and failed to provide promised facilities, services and amenities. Defendants brought an action seeking to recover damages for "(1) breach of agreements under which defendants leased to the several plaintiffs spaces in the park for use as sites for their respective mobile homes, (2) breach of agreements under which defendants sold mobile homes to the several plaintiffs, and (3) violations of G.S. 75-1.1(a)." 47 N.C. App. at 531, 268 S.E.2d at 98-9. At the conclusion of the trial, the jury awarded damages for breach of the lease and then awarded damages for defendants' failure to provide promised facilities, services and amenities, which were then trebled pursuant to G.S. 75-16. The breach of lease claim resulted from defendants' failure to provide promised facilities, services and amenities and damages were assessed for both breach of lease and failure to provide promised facilities, services and amenities, which were then trebled pursuant to G.S. 75-16.

In reviewing this award, we stated that the net result was to give some of the plaintiffs quadruple damages. This result was inconsistent with the legislative intent. Accordingly, the *Marshall* court held that one could only recover damages for breach of contract or violation of G.S. 75-1.1 "[w]here the same course of conduct gives rise to traditionally recognized cause of action." 47 N.C. App. at 542, 268 S.E.2d at 103.

Here, the trial court did not allow damages for both tortious interference with contract and G.S. 75-1.1(a) violation. Instead the court calculated lost profits and then trebled that amount pursuant to G.S. 75-1.1 *et seq.* There was no double recovery allowed. Accordingly, this assignment of error must also fail.

## IV. JUDICIAL NOTICE OF CONSENT ORDER

[4] Defendants assign as error the trial court's taking of judicial notice of a consent order dated 24 January 1986. Defendants entered a consent order providing for preliminary injunction restraining them from interfering with contracts entered into prior to 6 January 1986 between plaintiff and customers, from using materials to which they had access during their employment and from misleading or making false representations to contractors to divert business from plaintiff. Defendants argue in their brief that the "findings of fact and other proceedings upon a hearing to determine whether a temporary injunction should issue are not proper matters for the consideration of the court or jury in passing upon the issues at the final hearing and are, therefore, not binding upon them." Defendants cite *Huggins v. Board of Education*, 272 N.C. 33, 157 S.E.2d 703 (1967). On the other hand, plaintiff argues that the facts found in a consent order constitute a judicial admission and that a consent order is a "formal concession which removes the admitted fact from the field of evidence by formally conceding its existence." We disagree.

Initially, we note that a "consent judgment is a contractual agreement and '[i]ts meaning is to be gathered from the terms used therein, and the judgment should not be extended beyond the clear import of such terms. . . .'" *Price v. Horn*, 30 N.C. App. 10, 16, 226 S.E.2d 165, 168-9 (1976), *rev. denied*, 290 N.C. 663, 228 S.E.2d 450 (1976), quoting 47 Am. Jur. 2d, Judgments, Section 1085, p. 142.

Here the manifest purpose of the 24 January 1986 consent order was to preserve the status quo of parties in view of motion for preliminary injunction. It was not entered into to dispose of any facts critical to disposition of the issues which were to be tried. The trial judge erred in taking judicial notice of the consent order. However, the error was harmless.

The trial judge relied on the order in finding of fact number 20 where he found that "[b]y Defendants' own admissions as set forth in the Order dated 24 January 1986, they received as compensation from Plaintiff draws against their commissions which were 10% of each Defendant's sales." This fact was alleged in plaintiff's complaint and admitted in defendants' answers. "The reception of incompetent evidence to prove an admitted fact is not cause for disturbing the result at trial." *Wiles v. Mullinax*, 4 N.C. App. 73, 76, 165 S.E.2d 781, 783 (1969), *modified by* 275 N.C. 473, 168 S.E.2d 366 (1969). Accordingly, this assignment of error must fail.

## V.  OVERPAYMENT OF COMMISSIONS

[5]  Finally, the defendants assign as error the denial of their motion to dismiss the claim based on the overpayment of commissions and argue that there was not sufficient evidence to support a finding on that issue. Defendants contend that trial court erred in finding them liable for the entire amount of commission overpayment since they introduced evidence that plaintiff had agreed "to take care of" them and defendants had performed other tasks justifying additional compensation.

The law is clear that findings by the trial court will be upheld if there is some evidence to substantiate the finding. *Worthington v. Worthington*, 27 N.C. App. 340, 219 S.E.2d 260 (1975), *disc. rev. denied*, 289 N.C. 142, 220 S.E.2d 801 (1976); *Wachovia Bank & Trust N.A. v. Bounous*, 53 N.C. App. 700, 281 S.E.2d 712 (1981). Based upon the exhibits and testimony, the trial judge found that the basis of compensation was 10% commission. From the records submitted, the trial court then determined that defendants had been overpaid. There was evidence that each compensation check paid to defendants was annotated with the words: "advance on commission." Further, neither social security taxes nor income taxes were withheld from the compensation checks, which fact plaintiff alleges is consistent with the conclusion that they were commission payments. Since there was evidence to support the trial court's

findings, they will be sustained. Accordingly, this assignment of error must fail.

For the foregoing reasons, the judgment is

Affirmed.

Judges PARKER and GREENE concur.