L.M. HAMMERS v LOWE'S COMPANIES, INC.

No. 793SC352

(Filed 5 August 1980)

1. **Contracts § 25.1– breach of contract – insufficient complaint**
    Plaintiff's complaint failed to state a claim for breach of contract to furnish plans for and to provide a contractor to construct a house where the allegations showed that the parties never agreed upon final plans for the house which plaintiff wanted or upon a fixed price and that all that occurred was that extended negotiations took place, during the course of which defendant continued to propose plans and prices which plaintiff continued to find unacceptable.

2. **Negligence § 22– failure to negotiate satisfactory agreement – no claim for relief in tort**
    Although plaintiff alleged that defendant engaged in "negligent, willful, and deceptive negotiations and tactics" and that defendant's actions were "tortious in nature," plaintiff's complaint failed to state a claim for relief in tort where the specific facts alleged show no more than that plaintiff continued to be disappointed in negotiations which failed to produce from defendant an offer to build a house in accordance with plans which plaintiff would approve and at a price which plaintiff would agree to pay.

3. **Unfair Competition § 1– failure to negotiate satisfactory agreement – no unfair trade practice**
    Defendant's continued proposal of plans and prices for construction of a house which plaintiff found unacceptable did not constitute an unfair trade practice in violation of G.S. 75-1.1.

APPEAL by plaintiff from *Fountain, Judge.* Judgment entered 7 February 1979 in Superior Court, CRAVEN County. Heard in the Court of Appeals 28 November 1979.

Plaintiff initiated this action on 9 November 1978 to recover damages incurred as the result of defendant's breach of an alleged agreement to furnish plans for and to provide a contractor to construct a house. In his complaint plantiff alleged as a first claim for relief the following: In mid-1977 plaintiff reached an agreement with a developer in Craven County to exchange an undeveloped lot which plaintiff owned for a lot in a development then known as Treasure Lake. As a condition to the exchange, the developer required that plaintiff engage a contractor to build a home on the Treasure Lake lot. After receiving cost estimates from several building contractors in the New Bern area, plaintiff consulted an agent of defendant Lowe's to obtain another estimate. He submitted to defendant's agent a scale drawing of the house desired and designated the type and quality of building materials to be used. Plaintiff informed defendant's agent of his agreement with the Treasure Lake developer. After considering plaintiff's scale drawing and proposals, defendant's agent, intending to procure plaintiff's business, told plaintiff that defendant would be responsible for procuring the final building plans, retaining a contractor, and constructing plaintiff's house, with appliances selected by plaintiff, on the Treasure Lake lot, for a total "turn-key" cost of "approximately $35,000.00." Plaintiff agreed and paid $85.00 to defendant on 10 September 1977. Relying on defendant's agent's promise to send plans and a price breakdown within two weeks, plaintiff made no attempts to contact other contractors. On 1 November 1977, defendant submitted a written "formal bid" which stated $40,102.00 as the total cost, along with plans "for plaintiff's approval" which were substantially different from those requested, and plaintiff promptly notified defendant that he wished the plans redrawn and that the cost was unacceptable. After several months' delay and despite plaintiff's repeated requests for prompt action, defendant submitted new plans and a total cost quotation of $47,021.20 on 27 February 1978. After plaintiff again told defendant that the plans and the cost were unacceptable, defendant submitted another set of plans and cost quotations on 1 May 1978 which were identical to

those rejected on 27 February 1978. Plaintiff alleged that because of defendant's breach of the contract on or about 1 May 1978 he was forced to contract to have an inferior house built for $45,167.00 and that he had suffered damages in the amount of at least $15,000.00.

In his second claim for relief, plaintiff alleged that defendant, knowing that plaintiff was relying on defendant's expertise and that he was unable personally to supervise construction, had willfully represented that Lowe's would assume complete responsibility for the construction of plaintiff's house in order to induce plaintiff to accept Lowe's services and then to attempt to cause him to accept a building cost much higher than that originally agreed upon. He further alleged that defendant knew or should have known that it could not profitably construct the house for a cost of $35,000.00. In a final claim for relief, plaintiff alleged that defendant's conduct constituted a violation of G.S. 75-1.1, and prayed for an award of treble damages under G.S. 75-16 and attorney fees under G.S. 75-16.1.

On 11 January 1979 defendant moved under G.S. 1A-1, Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief could be granted. From the order granting defendant's motion, plaintiff appeals.

*Robert H. Shaw, III, and Michael P. Flanagan for plaintiff appellant.*

*Gaither M. Keener, Jr. for defendant appellee.*

PARKER, Judge.

Plaintiff attempted to state three claims for relief: first, a claim for damages for breach of contract; second, a claim for damages, including punitive damages, for conduct of the defendant which plaintiff characterized as "tortious in nature"; and third, a claim for treble damages for violation of G.S. 75-1.1. We agree with the trial judge that plaintiff failed to state any claim upon which relief can be granted. Accordingly, we affirm the judgment dismissing plaintiff's action on the grant of defendant's motion made under Rule 12(b)(6).

[1] As to the claim for breach of contract, plaintiff in paragraph 10 alleged that defendant's agent "told plaintiff that defendant would be responsible for procuring the final plans for the house, retaining a building contractor, and constructing plaintiff's house complete with appliances ... for a total 'turn-key' cost of 'approximately $35,000.00.' " In paragraph 11 plaintiff alleged that "[p]laintiff accepted defendant's proposal," and in paragraph 25 plaintiff alleged that "[d]efendant never carried out the obligations existing under the contract entered into between plaintiff and defendant." Considered in isolation from the remaining paragraphs of the complaint, these allegations might be sufficient under the "notice" theory of pleadings, *see* *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970), to withstand a Rule 12(b)(6) motion. They set forth an offer by defendant (though to do exactly what and for what price is left somewhat vague), an acceptance by plaintiff, and a breach on the part of the defendant. Therefore, had these been the only allegations in the complaint, it is possible that the motion to dismiss plaintiff's first claim should have been denied. We need not decide that question, however, since these were not the only allegations in the complaint, and when all of plaintiff's allegations are taken into account and considered together, it becomes abundantly clear that no contract ever resulted from the negotiations which took place between the parties. No final plans for the house which plaintiff wanted and no fixed price were ever agreed upon between the parties. All that occurred was that extended negotiations took place, during the course of which defendant continued to propose plans and prices which plaintiff continued to find unacceptable. When, as here, the complaint discloses facts showing that no contract was ever made between the parties, such disclosure necessarily defeats plaintiff's claim for breach of contract, and that claim was properly dismissed.

[2] As to plaintiff's second claim for relief, although plaintiff alleged in general terms that defendant engaged in "negligent, willful, and deceptive negotiations and tactics," and characterized defendant's actions as being "tortious in nature," such general allegations do not serve to create an actionable tort where the specific facts alleged show none to exist. The specific facts which plaintiff alleged show no more than that he con-

tinued to be disappointed in negotiations which failed to produce from the defendant an offer to build a house in accordance with plans which plaintiff would approve and at a price which plaintiff would agree to pay. Defendant's continued failure to make a proposal to plaintiff's liking gave rise to no actionable claim for relief, and plaintiff's second claim was properly dismissed.

[3] Finally, as to plaintiff's third claim, we find in the facts alleged no violation of G.S. 75-1.1. Admittedly, the language of that statute, proscribing as it does "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," is extremely broad, so broad and vague, indeed, as to render the triple damage penalty provided by G.S. 75-16 in a private action brought for violation of the vague language of G.S. 75-1.1 at least of questionable validity.[1] On the present record, however, we do not reach that constitutional question. As broad as the language of G.S. 75-1.1 is, we find it does not embrace a situation such as is disclosed by the allegations in plaintiff's complaint. We hold that defendant's failure to negotiate an agreement on terms satisfactory to plaintiff simply did not constitute a violation of G.S. 75-1.1. Defendant's third claim for relief was properly dismissed.

---

[1]It should be noted that no private right of action for treble damages similar to that provided by G.S. 75-16 is available for enforcement of the equally broad language of §5 of the Federal Trade Commission Act, 15 U.S.C. §45, *Federal Trade Commission v. Klesner*, 280 U.S. 19, 50 S. Ct. 1, 74 L. Ed. 138 (1929), enforcement of the Federal Act being by procedures which, in general, put the person accused of violating that Act on notice before penalties or sanctions are applied. *See Marshall v. Miller*, 47 N.C. App. 530, 268 S.E. 2d 97 (1980). Unlike the Federal Act, G.S. 75-16 confers upon the plaintiff in a private action the right to recover treble damages, which are punitive in nature, on proof he has been damaged by a violation of the vague language of G.S. 75-1.1 by a defendant who has not knowingly and willfully violated G.S. 75-1.1 and who has had no notice that his conduct may have violated that statute other than such notice as is contained in the vague language of the statute itself. In *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975), the only case in which our Supreme Court has approved an award of treble damages under G.S. 75-16 for a violation of G.S. 75-1.1, no question of constitutionality of the penalty provision was raised; in addition, stipulations of the parties and uncontradicted evidence in that case established that the defendants had engaged in conduct which at least three members of the Court considered to be "outrageous" and to constitute aggravated fraud, clearly a willful violation of G.S. 75-1.1.

Affirmed.

Chief Judge MORRIS and Judge HILL concur.