An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-186

Filed 17 September 2025

Carteret County, No. 21CVS696

ANDREW M. BLADES, Plaintiff,

v.

BLUSKY RESTORATION CONTRACTORS, LLC, Defendant.

Appeal by defendant from judgment entered 19 June 2023 by Judge R. Kent Harrell in Carteret County Superior Court. Heard in the Court of Appeals 29 January 2025.

> *Harvell & Collins PA, by Wesley A. Collins, for plaintiff-appellee.*

> *Carruthers & Roth, P.A., by Kevin A. Rust, J. Patrick Haywood, and Rachel Scott Decker, for defendant-appellant.*

GORE, Judge.

Defendant appeals the judgment rendered for breach of contract, unfair and deceptive trade practices ("UDTPA violation"), and plaintiff's attorneys' fees and costs. Defendant also appeals the order denying its motion for judgment notwithstanding the verdict ("JNOV"). Upon reviewing the briefs and the record, we affirm.

**I.**

Plaintiff is the owner of a commercial building, leased by a brewery at the time of the fire, that is the subject property of this case. On 27 December 2018, the brewery caught fire and sustained damage. On 3 January 2019, plaintiff's insurance agent, Jackson Hill, contacted him to request plaintiff meet him at the property. Plaintiff met Hill, at the property, at dusk and was introduced to defendant's employee, Paul Whipple. Defendant's employee told defendant the smoke from the fire was a real concern and it "was imperative [plaintiff] get that smoke out of there and as quickly as possible before [the smoke] rendered the building unusable." Defendant's employee also told plaintiff it was "a legal issue" and repetitively told plaintiff this was insurance's bill and not plaintiff's bill. Defendant and Hill pressed that the removal of smoke was urgent and that they needed to start remediating the building.

Defendant presented a work authorization document (the "Contract"), folded in half, and requested plaintiff sign it. Plaintiff testified he felt a great amount of pressure to sign the Contract because of the urgency expressed by Hill and defendant, and because of the assurance that it was not his bill but instead insurance's bill. Plaintiff thought the Contract was only an authorization to remove the smoke from the building. Plaintiff did not receive a copy of the Contract after signing it until after defendant began remediating the building.

Despite the supposed urgency, defendant began work on the building a month later and assured plaintiff that he should not be concerned with the cost because it

was his insurance company's bill. Plaintiff received a copy of the Contract weeks after defendant began work, but did not receive a copy of the Time & Materials documents referenced in the Contract. Plaintiff came to the building often while defendant remediated the building. Plaintiff objected multiple times to removal of undamaged portions of the building but was ignored or told to talk to defendant. Defendant removed ceiling structures, bathroom parts, undamaged walls, and an undamaged wooden stage.

On 10 March 2019, upon completion of defendant's remediation, plaintiff signed a certificate of completion. The Certificate of Completion stated:

> I acknowledge that I have made a thorough inspection of the interior and exterior of the property described above. I accept the work as being complete except for those items listed below. I understand that subject to the 1-year limited warranty, this will be my only opportunity to obtain service on cosmetic items such as paint touch-up, scratches, drywall patches, cleaning, etc. Future claims on these types of damages will not be honored.

Defendant later sent plaintiff an un-itemized bill for $232,000.00. Prior to paying, plaintiff sought assurance from his insurance company that it would reimburse him. However, his insurance company did not fully reimburse the expense because it determined the price exceeded plaintiff's policy limits by approximately $57,000.00.

Plaintiff filed a complaint against defendant on 21 July 2021 for breach of contract, breach of the implied covenant of fair dealing, unjust enrichment, fraudulent nondisclosure, conversion and trespass, and unfair and deceptive trade

practices. Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices withstood summary judgment and directed verdict.

At trial, plaintiff's construction expert testified defendant unnecessarily removed approximately 40% of the building and its materials. The construction expert also testified that after the remediation by defendant, the cost to restore the building to its prior design was estimated to be $318,482.00. Defendant admitted at trial that by removing more structure and material the cost during the rebuild would increase. Plaintiff testified to feeling he could not stop defendant's workers from tearing apart the building and when he attempted to contact defendant he could not get in touch with defendant. Plaintiff testified that beyond the cost of the remediation, the actual design of the building mattered to him because he planned to utilize the rent on the building as retirement income. Plaintiff's pricing expert testified defendant's billing practices and items billed were not industry standard and that the work completed could have been done for approximately $80,000.00. Some of the charges considered much higher than industry standard were:

> 1)     Charging for [defendant's] workers' hotel expenses;
> 2)     Charging 20% overhead for [defendant's] workers' hotel expenses;
> 3)     Repeated instances of overtime paid to workers who had not worked over 40 hours;
> 4)     Charging exorbitant amounts, to include a $700.00 per day charge for an unnecessary generator to be onsite at the building, and $36.35 for a single gallon of Simple Green cleaner.

The jury returned a verdict finding defendant breached the contract and found nine aggravating circumstances beyond the breach of contract to support a UDTPA violation. The jury found plaintiff was entitled to $144,000.00 in damages for the breach of contract, and $1.00 in nominal damages for the UDTPA violation. Plaintiff moved for attorneys' fees and costs pursuant to N.C.G.S. § 75-16.1 upon the jury's finding of aggravating circumstances for a UDTPA violation. The trial court determined as a matter of law that the jury's verdict supported a UDTPA violation, and determined plaintiff was entitled to an award of attorneys' fees and costs pursuant to section 75-16.1. The trial court entered a judgment against defendant in the amount of $144,003.00 plus interest, $99,350.00 in attorneys' fees and $2,364.35 in costs with interest. After the verdict, the trial court denied defendant's motion for JNOV. Defendant timely appealed the denial of the directed verdict, the denial of the JNOV motion and the judgment.

## II.

Defendant appeals of right pursuant to N.C.G.S. § 7A-27(b)(1). Defendant seeks review of multiple issues surrounding its judgment and its denied motion for JNOV. Defendant seeks review of the following: 1) the trial court's determination that defendant engaged in unfair and deceptive trade practices; 2) the separate and distinct awards for the breach of contract claim and UDTPA violation; 3) the attorneys' fees and costs awarded to plaintiff pursuant to the UDTPA violation; and

4) whether plaintiff waived its breach of contract claim. Notably, apart from the issue of waiver, defendant concedes it breached the contract.

We review a denial of a motion for JNOV similarly to a directed verdict by considering "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 720 (2009). "A motion for [JNOV] is essentially a renewal of an earlier motion for directed verdict." *Id.* (internal quotation marks and citation omitted). "A directed verdict and [JNOV] are therefore, not properly allowed unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Id.* (internal quotation marks and citations omitted). "If there is more than a scintilla of evidence to support the plaintiff's *prima facie* case," then the trial court properly denies a motion for JNOV. *Ellis v. Whitaker*, 156 N.C. App. 192, 195 (2003) (cleaned up).

## A.

Defendant first argues the trial court erred by denying its motion for JNOV and concluding defendant committed a UDTPA violation after the jury's verdict. Defendant argues plaintiff did not show substantial aggravating circumstances apart from the breach of contract. Defendant further argues that over-remediation and overbilling are breaches of the contract rather than aggravating factors sufficient to support a UDTPA violation. Conversely, plaintiff argues the trial court properly

determined defendant committed a UDTPA violation because the jury found nine aggravating circumstances that were "attendant to the breach of contract."

The party alleging a UDTPA violation must provide evidence of the following to establish a prima facie case: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 277 (2023). "A trade practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. A trade practice is deceptive if it has the capacity or tendency to deceive." *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 61–62 (1992) (internal quotation marks and citations omitted). "A plaintiff must show substantial aggravating circumstances attending the breach of contract to recover under section 75-1.1." *Id.* at 62 (cleaned up).

Once a jury returns a verdict finding substantial aggravating circumstances, it is within the trial court's purview to determine whether these circumstances amount to a UDTPA violation as a matter of law. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). In the present case, the jury found the following nine substantial aggravating circumstances to support the UDTPA violation:

1.    Failing to disclose their billing practices to [plaintiff];

2.    Coercing [plaintiff] into signing the contract while it was dark, knowing [that plaintiff] would have a decreased ability to see the contract;

3.      Telling [plaintiff] that he must sign the contract immediately because it was a "legal matter" and that it was necessary to get the smoke out immediately;

4.      Folding the contract in such a way as to only make the signature page visible and obscuring the remaining portions of the contract;

5.      Presenting [plaintiff] with an incomplete version of the contract at the time of contract negotiations;

6.      Removing unnecessary structure and material during demolition in an attempt to profit during reconstruction;

7.      Refusing to respond to [plaintiff] when he attempted to raise issues and concerns with [defendant];

8.      Refusing to discuss the terms of the contract after [plaintiff] signed, despite [plaintiff's] repeated attempts to contact [defendant];

9.      Failing to provide [plaintiff] with a copy of the contract within a reasonable time after signing.

Defendant does not challenge the validity of these findings but instead summarizes the findings as merely "overbilling," and argues that this is more appropriately recognized as a breach of the contract rather than an unfair or deceptive trade practice. Defendant challenges the effect of these findings rather than the existence of the jury's findings. Defendant relies upon *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 369 (2000), to argue that "numerous allegations" of a defendant's breach of an agreement did not support a UDTPA claim. Defendant also relies upon *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 513 (2013), to demonstrate billing errors do not amount to

egregious or aggravating circumstances. Yet notably in both cases, the trial courts granted summary judgment after determining the plaintiffs failed to show "sufficient" or any aggravating circumstances. *Eastover Ridge, LLC*, 139 N.C. App. at 369; *Phelps Staffing, LLC*, 226 N.C. App. at 513.

"Trial courts have the capacity and authority to recognize an unfair or deceptive trade practice when they see one." *Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 59 (1986) (cleaned up). In determining whether a UDTPA violation exists, trial courts consider "the facts of each case and its impact on the marketplace." *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 177 (1998) (citation omitted); *United Labs., Inc. v. Kuykendall*, 102 N.C. App. 484, 490 (1991), *aff'd,* 335 N.C. 183 (1993). As previously stated, review under the JNOV standard requires we take the evidence in the light most favorable to plaintiff, the non-moving party. Although defendant argues these aggravating circumstances are summarized as "overbilling," we determine there is more than a scintilla of evidence to support plaintiff's prima facie UDTPA claim and support the jury's findings. Accordingly, the trial court did not err when it denied the JNOV motion after determining as a matter of law that the jury's findings in the aggregate resulted in a UDTPA violation.

**B.**

Next, defendant argues the trial court erroneously granted double recovery for the breach of contract and UDTPA violation. We disagree.

We have previously determined that distinct awards are given for breach of contract and UDTPA actions when the trier of fact finds the defendant breached a contract and committed a UDTPA violation.

> [A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty. Since the remedy was created partly because those remedies often were ineffective, it would be illogical to hold that only those methods of measuring damages could be used. To rule otherwise would produce the anomalous result of recognizing that although [section] 75-1.1 creates a cause of action broader than traditional common law actions, [section] 75-16 limits the availability of any remedy to cases where some recovery at common law would probably also lie.

*Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 232 (1984) (internal quotation marks and citations omitted). "A plaintiff must prove actual injury as a proximate result of the violation of N.C.G.S. § 75–1.1 to recover damages arising from an unfair and deceptive trade practices claim." *Decker v. Homes, Inc./Constr. Mgmt. & Fin. Grp.*, 187 N.C. App. 658, 666 (2007) (cleaned up). The plaintiff may recover damages for either the breach of contract or the UDTPA violation, but not both, when the defendant's "same course of conduct gives rise to . . . an action for breach of contract, and . . . gives rise to a cause of action for violation of [section] 75-1.1." *Marshall v. Miller*, 47 N.C. App. 530, 542 (1980), *aff'd as modified,* 302 N.C. 539 (1981).

In the present case, the jury found defendant breached the contract and found substantial aggravating circumstances in addition to the breach. The trial court determined as a matter of law that the substantial aggravating circumstances

attendant to the breach was a UDTPA violation.  The jury found defendant should pay $144,000.00 in actual damages for the breach of contract and $1.00 in nominal damages for the UDTPA violation.  Plaintiff moved and the trial court considered an award of attorneys' fees and costs pursuant to section 75-16.1.

Defendant relies on *Decker* to argue against a double recovery and suggest no actual damages were determined to support the UDTPA violation.    We do not see the supposed similarity between the present case and *Decker* as defendant argues. In *Decker*, an entry of default established the UDTPA violation but no other liability was addressed to recognize actual damages apart from the default.  187 N.C. App. at 666.  The *Decker* Court determined the plaintiffs were "entitled to one recovery for the same alleged wrongful conduct."  *Id.*

In the present case, the jury considered substantial aggravating circumstances in addition to the breach of contract and found nine circumstances existed.  The trial court determined as a matter of law that these nine aggravating circumstances attendant to the breach supported a UDTPA violation.  Further, we have previously allowed damages for both breach of contract and a UDTPA violation when the jury found acts committed by the defendants separate from a mere breach that supported a UDTPA violation.  *See Estate of Hurst ex rel. Cherry v. Moorehead I, LLC*, 228 N.C. App. 571, 580, 583–84, 586 (2013).

Additionally, we address the law argued by defendant that was established in *Miller*.  The trial court's determination in the present case is consistent with *Miller*.

In *Miller*, the jury assessed damages for both a contractual breach and a UDTPA violation for the same conduct. 47 N.C. App. at 542. The trial court trebled these damages such that the plaintiff was improperly given quadruple in damages for the same conduct. *Id.* In the present case, the jury assessed contractual damages for the breach and nominal damages for the UDTPA violation based upon additional findings. The trial court awarded damages for the breach, the additional conduct amounting to a UDTPA violation, and plaintiff's attorneys' fees and costs. We determine the trial court did not err nor did it allow plaintiff a double recovery as argued by defendant because the conduct was more than a mere breach and the jury found aggravating circumstances beyond the breach.

**C.**

Defendant argues the trial court improperly awarded attorneys' fees and costs to plaintiff. Specifically, defendant argues plaintiff failed to establish actual injury for the UDTPA violation distinct from the breach, and to the extent the fees and costs were proper, the trial court's assessment was excessive. In considering the appropriateness of an award for attorneys' fees and costs, section 75-16.1 allows for the trial court to award attorneys' fees and costs within its discretion. N.C.G.S. § 75-16.1 (2023). Thus, we review the award for attorneys' fees and costs to determine whether the trial court abused its discretion pursuant to section 75-16.1.

Prior to awarding attorneys' fees and costs, "the trial court must find: (1) plaintiff is the prevailing party; (2) defendant willfully engaged in the act at issue;

and (3) defendant made an unwarranted refusal to fully resolve the matter." *Evans v. Full Circle Prods., Inc.*, 114 N.C. App. 777, 781 (1994). Our Supreme Court has recognized that an award of reasonable attorneys' fees and costs pursuant to section 75-16.1 "was designed to supplement common law remedies that often proved ineffective to redress unfair and deceptive practices." *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 190 (1993). "The purpose of attorneys' fees in Chapter 75 . . . is to encourage private enforcement of Chapter 75." *Id.* at 192. If "the conduct required for an award of attorneys' fees is different" from conduct involving the breach of contract, and if they "serve different interests, permitting the plaintiff to recover both will not result in double redress for a single wrong." *Id.* at 194.

In *Kuykendall*, our Supreme Court allowed both recovery of punitive damages for the tort claim and attorneys' fees for the UDTPA claim. *Id.* It also clarified that allowing both untrebled compensatory damages pursuant to Chapter 75 and punitive damages under a tortious interference claim were not duplicitous because "they served different purposes and are calculated on entirely different bases." *Id.* Thus, the *Kuykendall* Court upheld compensatory damages for the section 75-1.1 violation, punitive damages for the tortious interference claim, and remanded for further findings to support the attorneys' fees award for the UDTPA violation. *Id.* at 195.

In the present case, the attorneys' fees and breach of contract awards serve different purposes and "are calculated on different bases." *Id.* Accordingly, having

determined the awards were not duplicitous, we consider whether the trial court made proper findings as to the reasonableness of the attorneys' fees and costs.

Defendant argues the attorneys' fees were excessive because the trial court did not separate the fees associated with the breach of contract claim from the UDTPA violation. In determining a discretionary award for attorneys' fees and costs, the trial court's findings should include:

> 1) the time and labor expended;
> 2) the skill required;
> 3) the customary fee for like work;
> 4) the experience or ability of the attorney;
> 5) the novelty and difficulty of the questions of law;
> 6) the adequacy of the representation;
> 7) the difficulty of the problems faced by the attorney, especially any unusual difficulties; and
> 8) the kind of case for which the fees are sought and the result obtained.

*Kuykendall*, 335 N.C. at 195 (cleaned up).

In the present case, the trial court made extensive findings to support its award for attorneys' fees and costs. Defendant argues the trial court abused its discretion because fees and costs amounting to $99,350.00 are excessive when paired with nominal damages for the Chapter 75 violation. However, defendant cites no law apart from an unpublished case to argue that the fees should have been apportioned based upon only the UDTPA violation. On this basis, defendant argues that the trial court's finding that the breach of contract and UDTPA violation were "so intertwined" suggests the trial court improperly allowed attorneys' fees for the breach of contract

claim.  "Apportionment of fees is unnecessary when all the claims in an action arise from the same nucleus of operative fact such that each claim is inextricably interwoven with the other claims." *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 242 N.C. App. 456, 459 (2015) (cleaned up).

Although defendant argues plaintiff should not recover fees and costs associated with the breach of contract or dismissed claims,

> where attorneys' fees are not recoverable for defending certain claims in an action but are recoverable for other claims in that action, fees incurred in defending both types of claims are recoverable where the time expended on defending the non-recoverable and the recoverable claims overlap and the claims arise from a common nucleus of law or fact.

*Id.*  Further, nominal damages for a UDTPA violation are sufficient for the plaintiff to also recover attorneys' fees and costs pursuant to section 75-16.1.  *See Pinehurst, Inc.*, 79 N.C. App. at 64 (allowing an award of attorneys' fees and costs pursuant to N.C.G.S. § 75-16.1 after a returned verdict of nominal damages for a UDTPA violation).  The trial court did not abuse its discretion in awarding attorneys' fees and costs that may have overlapped with the other claims argued.

**D.**

Finally, defendant also argues that plaintiff waived its breach of contract claim by signing a completion document for the remediation work and by paying defendant.  Defendant relies on *Cantrell v. Woodhill Enters., Inc.* to support its contention plaintiff waived his right to assert a breach of contract claim.  We disagree.

- 15 -

In *Cantrell*, the plaintiff sued for building and landscaping work done after signing a declaration of acceptance and paying for the work done. 273 N.C. 490, 495–96 (1968). The plaintiff argued the landscape was not done according to what was agreed in the contract. *Id.* While the *Cantrell* Court did determine plaintiff waived a breach of contract claim for the landscaping work done, it also determined the plaintiff did not waive the latent defects to the house, those defects the plaintiff was "ignorant" of or did not discover until after. *Id.* at 496.

Whereas in the present case, defendant has already conceded to a breach of the contract and the evidence at trial demonstrates the bill paid by plaintiff was not itemized nor given at the time he signed the completion document. A party may only waive a breach when the party has full knowledge of the "imperfect performance" and accepts on that basis. *Cantrell*, 273 N.C. at 496; *see Wheeler v. Wheeler*, 299 N.C. 633, 637–39 (1980) (discussing the knowledge component and intention the waiving party must have to manifest a true waiver). Plaintiff lacked knowledge of the breach when he signed the completion of work document, therefore the trial court did not err by denying defendant's motion for a directed verdict and JNOV for waiver of the breach of contract.

## III.

For the foregoing reasons, we affirm the trial court's judgment and denials of the motion for a directed verdict and motion for JNOV.

AFFIRMED.

Judges ARROWOOD and MURRY concur.

Report per Rule 30(e).